996 F.2d 1214
 RICO Bus.Disp.Guide 8345
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
EMPIRE SERVICES, INC., Plaintiff-Appellee,
v.
Thomas N. KANZA, Defendant-Appellee.
 No. 92-5494.
 United States Court of Appeals, Sixth Circuit.
 July 1, 1993.
 
 Before: MARTIN and SILER, Circuit Judges; and COFFIN, Senior Circuit Judge.*
 PER CURIAM.
 
 
 1
 Thomas N. Kanza appeals the district court's final default judgment against him in this diversity action regarding fraudulent conduct. Upon motion of Empire Services, the district court entered a default when Kanza failed to plead within the time required. A judgment for $187,500 and $10,157 in attorney fees was entered after holding a hearing on the entry of default. We affirm the district court.
 
 
 2
 Empire Services, Inc., a Tennessee corporation with its principal place of business in Nashville, Tennessee, is the successor in interest to James L. Winfree in certain contract rights against Thomas Kanza, a citizen of Zaire, Africa and a resident of Oxford, England. Winfree was to receive fees from Kanza for locating individuals to provide export financing for coffee shipments, and the lenders would receive their principal and a thirty percent return on their loans after the coffee was exported.
 
 
 3
 Shortly after January 15, 1989, Kanza persuaded Winfree to become involved in the export financing scheme. The alleged export contracts provided for purchase of coffee from growers in Zaire and Congo and shipment of the coffee to European buyers pursuant to other contracts that had been executed earlier. Kanza represented that the contracts with the European buyers had been negotiated by him on behalf of certain corporations in which he had invested. These companies included S.N.E.C., a corporation in Congo, FATIM (U.K.), a British corporation, and FATIM (Zaire), a Zairian corporation.
 
 
 4
 Winfree convinced two unidentified lenders to provide $25,000 each for Kanza's financing scheme. According to Empire Services, the agreement with Kanza provided that Winfree would obtain a $5,000 finder's fee for each shipment, and each lender would receive $2,500 per shipment. Kanza told Winfree that the coffee contracts dictated that there would be approximately one shipment per month for nine months, starting March 30, 1989. Neither Winfree nor the lenders ever received payment from Kanza. On May 15, 1989, Kanza sent a copy of a proposed coffee contract by telefax from London to Nashville to forestall action by Winfree and the two lenders to collect their investment principal and profits.
 
 
 5
 Winfree later purchased the entire claim of one of the lenders and acquired the rights to receive some of the second lender's profits. However, the second lender did not transfer the right to return of principal. Winfree continued to request repayment of principal, but Kanza did not pay the profits that he promised or return the principal. Winfree subsequently assigned all of his rights against Kanza to Empire Services.
 
 
 6
 On April 27, 1990, Empire Services filed a complaint against Kanza alleging a violation of the Racketeer Influenced and Corrupt Organizations (RICO), 18 U.S.C. § 1961, et seq. The complaint also listed state causes of action for breach of fiduciary duty, conversion, and fraudulent breach of trust. Empire Services alleges that Kanza knowingly made false and fraudulent statements by telephone and in person to induce lenders to enter the financing contracts and to assure them that the coffee contracts remained in effect.
 
 
 7
 On May 3, the Tennessee Secretary of State mailed a copy of the complaint and summons to Kanza in England by certified mail with a return receipt requested, in accordance with state law, but a return receipt was not received. Empire Services filed a motion to declare service effective and for entry of a default judgment pursuant to FED.R.CIV.P. 55(a) for failure to answer. The district court ruled that service had been perfected and entered default against Kanza on April 29, 1991.
 
 
 8
 Kanza moved to set aside the default on the grounds that service was ineffective, that Empire Services lacked standing, and that the pleadings were insufficient to state a RICO claim. On March 6, 1992, the district court denied Kanza's motion and granted Empire Services a judgment of $187,500 plus $10,157 in attorney's fees. The amount of the judgment was based on total damages of $62,500, trebled pursuant to 18 U.S.C. § 1964(c) (RICO). The $62,500 figure represents $50,000 in principal plus $12,500 in prejudgment interest on the investments computed at an annual rate of ten percent between February 8, 1989 and August 8, 1991. On April 3, 1992, Kanza filed a notice of appeal.
 
 
 9
 Before addressing Kanza's arguments, we confirm that the district court had jurisdiction to decide this dispute. The district court has subject matter jurisdiction based on diversity of citizenship because Empire Services is a Tennessee corporation and Kanza is a citizen of Zaire. Additionally, the RICO claim is a federal question which confers subject matter jurisdiction to the district court. Personal jurisdiction is based on Tenn.Code Ann. § 20-2-214, the Tennessee Long-Arm Statute. Kanza traveled to the forum state to solicit business from James Winfree and his associates, the predecessors in interest to the claims of Empire Services. While Kanza was in Tennessee, he allegedly made fraudulent representations. Moreover, on May 15, 1989, Kanza sent a copy of a proposed export contract by telefax from London to Nashville to convince Winfree and the investors that the financing scheme was legitimate. These actions are sufficient to establish personal jurisdiction.
 
 
 10
 Kanza faces a substantial hurdle in seeking to have us overturn the final default judgment against him. Once the district court has entered a default judgment, setting aside an entry of default becomes very difficult. See FED.R.CIV.P. 55(c) (indicating that a defendant may move for relief from a judgment pursuant to FED.R.CIV.P. 60(b) after a judgment by default has been entered). The district court could have set aside the entry of default against Kanza pursuant to FED.R.CIV.P. 55(c) for "good cause shown." The district court determined that Kanza presented no good cause for setting aside the entry of default, and the court entered a final default judgment pursuant to FED.R.CIV.P. 55(b)(2).
 
 
 11
 Upon review, a default that has become final as a judgment can be set aside only under strict standards for setting aside final and appealable orders. Berthelsen v. Kane, 907 F.2d 617, 620-21 (6th Cir.1990). In United Coin Meter v. Seaboard Coastline Railroad, 705 F.2d 839, 845 (6th Cir.1983), we outlined three important considerations, which, as applied in this case, are: (1) whether Empire Services will be prejudiced by reopening the case, (2) whether Kanza has a meritorious defense, and (3) whether Kanza's culpable conduct led to the default.
 
 
 12
 In regard to the possibility of prejudice against Kanza, Empire Services contends that Kanza has moved to Zaire, thereby increasing the difficulty of discovery. However, we find no evidence in the record to support the allegation that Kanza has relocated. Consequently, we do not find that there is a sufficient likelihood of prejudice to require us to affirm the default judgment on this basis.
 
 
 13
 Another factor to be considered on review of the default judgment is Kanza's defenses. The district court held that all three of Kanza's defenses are without merit. We agree. Kanza first raises the defense that he was improperly served with notice of Empire Service's claim. Due process requires proper service of process for the court to have jurisdiction to adjudicate the rights of the parties. Amen v. Dearborn, 532 F.2d 554, 557 (6th Cir.1976). Therefore, if service of process was not proper, the court must set aside the default judgment. FED.R.CIV.P. 4(c)(2)(C)(i) provides that service shall be made in accordance with state law. Empire Services attempted to effect service by employing the procedures set out in Tenn.Code Ann. § 20-2-215. That statute states, in pertinent part:
 
 
 14
 (a) Service of such process shall be made by lodging ... with the secretary of state, who shall promptly send, postage prepaid, the certified copy by a registered or certified return receipt mail to the defendant, along with written notice that service was so made.
 
 
 15
 In accordance with the statute, Empire Services delivered the original summons and a certified copy of the complaint to the Office of the Secretary of the State of Tennessee, and the Secretary of State mailed those documents by certified return-receipt mail to Kanza at his England address. Once the Secretary of State receives the return receipt, the statute directs him to notify the district court clerk of the receipt. For unknown reasons, however, the postal authorities never returned the certified mail receipt to the Secretary of State. Although the return receipt was never returned, the district court exercised its authority to declare service effective. FED.R.CIV.P. 4(i)(1)(D).
 
 
 16
 Kanza argues that there is insufficient evidence to indicate that Kanza had received or had knowledge of the complaint and summons. Kanza contends that the absence of a signed return-receipt establishes that Kanza was not properly served. However, Empire Services made proof of service on Kanza as permitted by FED.R.CIV.P. 4(i)(2) by presentation of evidence of delivery in the form of an affidavit of Empire Services' attorney. Therefore, Empire Services established that service of process was sufficient and proper.
 
 
 17
 Kanza's second defense is that Empire Services was not the real party in interest in this matter, and therefore, that Empire Services lacked standing in this action. However, Empire Services was a valid assignee of Winfree, and therefore, had standing. Winfree was entitled to payment from Kanza for locating lenders. Winfree also bought the entire claim of one of the original lenders and acquired the rights to receive a portion of the second lender's promised profits. Winfree later assigned all of his rights against Kanza to Empire Services as permitted under Tennessee law. See Ford v. Robertson, 739 S.W.2d 3 (Tenn.Ct.App.1987). Thus, this defense is without merit.
 
 
 18
 Kanza's final defense is that Empire Services failed to allege a RICO cause of action because there was only one alleged fraudulent action with no specific allegations that a racketeering enterprise existed. Kanza contends that Empire Services failed to allege at least two illegal acts as required to establish a "pattern of racketeering activity." 18 U.S.C. § 1961(5). Kanza argues that Empire Services could not show a pattern of illegal activity because there was only one meeting between the lenders and Kanza. The district court accepted the magistrate judge's determination that Kanza's numerous false statements to potential and actual investors presented a threat of continuing illegal conduct and constituted a pattern of criminal activity within the meaning of the statute. We agree with this evaluation. See H.J. Inc. v. Northwestern Bell Telephone, Inc., 492 U.S. 229, 239 (1989) (holding that a pattern of racketeering may be established by showing "that the racketeering predicates are related, and that they amount to or pose a threat of continued criminal activity.") Therefore, all of Kanza's defenses are without merit and cannot provide a basis for reversing the default judgment.
 
 
 19
 The third factor in reviewing a default judgment is to determine whether Kanza's willful conduct led to the default. Kanza disregarded the complaint even though it was properly served and he was at least constructively aware of it. The default judgment resulted from Kanza's conscious decision not to respond to the district court's service of process. Consequently, Kanza is not entitled to a reversal of the default judgment because of his own culpable conduct.
 
 
 20
 Accordingly, the judgment of the district court is affirmed.
 
 
 
 *
 The Honorable Frank M. Coffin, Senior Circuit Judge for the United States Court of Appeals for the First Circuit, sitting by designation